IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FT. SMITH DIVISION

DANIEL PRICE, Individually, and on
Behalf of All Others Similarly Situated                          PLAINTIFF

NO. 10-2152

UNITED SERVICES AUTOMOBILE
ASSOCIATION, USAA CASUALTY
INSURANCE COMPANY, USAA GENERAL
INDEMNITY COMPANY, and USAA                          DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On July 18, 2011, Plaintiff's Motion to Certify Class (Doc. 47) was referred to the undersigned. On August 26, 2011, the briefing was completed on this motion. In reviewing the parties' pleadings and briefs and researching applicable caselaw, the undersigned became concerned about a jurisdictional issue that was not previously addressed by the parties. The undersigned, therefore, conducted a telephonic hearing on October 25, 2011, to apprise the parties of this issue and directed the parties to file briefs addressing it. The parties completed briefing on the jurisdictional issue on November 29, 2011, and the matter is now ripe for consideration. For the reasons set forth below, the undersigned believes that the Court lacks subject matter jurisdiction over this action, and, accordingly, recommends that this action - including the motion for class certification – be remanded to state court.

### Background

1.      The Plaintiff commenced this action in the Circuit Court of Sebastian County, Arkansas, on September 2, 2009. In the Second Amended Petition filed in state court, Plaintiff asserted a putative class action:

AO72A
(Rev. 8/82)

> [F]or all other similarly situated Arkansas policy holders of motor vehicle policies of insurance issued by [Defendants] .... The claims asserted herein arose out of [Defendants'] payment under personal injury ... and ... medical benefit coverages to or on behalf of its insureds, and then asserting and collecting on claims for subrogation against third party tortfeasors (and their insurers) who were responsible for causing injuries to [Defendants'] insureds, without first determining that [their] insureds had been "fully compensated" or "made whole" for their damages.  As a result, [Defendants] have been collecting and retaining money that rightfully belongs to its insureds.

(Doc. 1-23 at ¶ 12.)  Plaintiff asserted that the policies issued by Defendants provided that the Defendants would be entitled to subrogation "only after the covered person has been fully compensated for damages." (Id. at ¶ 13.)  Plaintiff further asserted that under Arkansas caselaw, an insurer was not entitled to subrogation unless and until its insured had been "made whole." (Id. at ¶ 14.)   Plaintiff sought a declaratory judgment that, under Arkansas law and the policy language, Defendants had a duty to make a determination that their insureds had been "fully compensated" and "made whole" for their damages before asserting and collecting on their claims for subrogation.  (Id. at ¶ ¶ 64, 65.)  Plaintiff also asserted claims for breach of contract, conversion, breach of fiduciary duty, and injunctive relief.

2.     On October 13, 2010, the Defendants removed the action to this Court under the Class Action Fairness Act (hereinafter "CAFA"), 28 U.S.C. § 1332(d).  (Doc. 1.)  Defendants asserted that there was diversity of citizenship between Plaintiff and Defendants and that the amount in controversy exceeded $5,000,000.00, exclusive of interest and costs, as required to meet the jurisdictional requirements of CAFA.  See 28 U.S.C. § 1332(d)(2).  Plaintiff moved to remand the matter to state court, arguing that the Court lacked subject matter jurisdiction, as the aggregate amount in controversy was less than $5,000,000.00  (Doc. 12.)

-2-

3.      In an order dated January 10, 2011, Chief Judge Jimm Larry Hendren denied the

motion to remand.  In the order, Judge Hendren itemized the potential damages - as calculated

by the Defendants[1]  -  as follows:

| | |
|---|---|
| Actual subrogation collected for the past five years: | $1,873, 277.48 |
| Additional year of collection during litigation: | 375,000.00 |
| 12% Penalty: | 269,793.00 |
| 33.3% Attorney's Fees: | 839,355.83 |
| TOTAL | $3,357,426.31 |

(Doc. 17 at pg. 3)  Judge Hendren observed that the Defendants bore the burden of proving that

the jurisdictional threshold had been satisfied by a preponderance of the evidence, and that, if

the Defendants met their burden, then remand was only appropriate if the Plaintiff could

establish to a legal certainty that the claims were for less than the requisite amount.  See Bell v.

Hershey, 557 F.3d 953, 957 (8th Cir. 2009).   Judge Hendren noted Defendants' argument that

"even a very low punitive/compensatory damages ratio [0.5:1] would cause the total damages

in controversy to exceed the $5,000,000.00 requirement."  (Id.)  Judge Hendren concluded that

Defendants had proven by a preponderance of the evidence that the jurisdictional minimum was

satisfied and that, while Plaintiff argued punitive damages should not be included in the damages

calculation, Plaintiff had "*not* disclaimed" punitive damages, and therefore, had not shown to a

legal certainty that his claim was for less than the requisite amount.  (Id. at pg. 5.)

_____

[1]Defendants' calculations were based on a declaration submitted by Adrian Carrizales, a Senior Business Applications Analyst/Market Research and Analysis.  (Doc. 1-29.)

**Discussion**

4.       "If at any time before final judgment it appears that the district court lacks subject

matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  The Court's jurisdiction

is measured at the time of removal, and subsequent events which reduce the amount in

controversy do not divest the Court of jurisdiction.  See Schubert v. Auto Owners Ins. Co., 649

F.3d 817, 822-23 (8th Cir. 2011) .  Thus, while Plaintiff amended his complaint after removal,

the amount in controversy is determined by the Second Amended Petition that was pending at

the time of removal.

5.       The undersigned believes there is an issue as to whether statutory attorney's fees

and penalties, even if sought in the Second Amended Petition, are actually recoverable under

Arkansas law in a case of this nature, and thus, whether these amounts should be included in

calculating the jurisdictional minimum.  This issue was not previously brought to the Court's

attention, as it was not raised or addressed by the parties in the notice of removal or the briefs

on the motion to remand.  Nevertheless, district courts have an obligation to consider the issue

of subject matter jurisdiction *sua sponte* if it appears that jurisdiction may be lacking.  See Hart

v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011).

**Statutory Attorney's Fees and Penalty**

6.       Only statutory attorney's fees count toward the jurisdictional minimum

calculation.  See Hartis v. Chicago Title Ins. Co., 656 F.3d 778, 781 (8th Cir. 2009).  In their

notice of removal, Defendants asserted that Plaintiff sought a 12% statutory penalty and

attorney's fees pursuant to Ark. Code Ann. § 23-79-208, and that these amounts should,

therefore, be included in calculating the amount in controversy.  The cited Arkansas statute

-4-

provides, in relevant part, that if an insurance company "shall fail to pay the losses within the time specified in the policy after demand is made," the insurance company shall be liable to its insured for 12% "damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss."  Ark. Code Ann. § 23-79-208(a)(1).

7.      In <u>Shelter Mut. Ins. Co. v. Kennedy</u>, 347 Ark. 184 (2001), an insured filed suit seeking a determination that her insurer was not entitled to subrogation from the settlement of a tort claim, as she had been "inadequately compensated" by the settlement.  The Arkansas Supreme Court determined that the insured was not entitled to attorney's fees under the above statute, as "she was not seeking to enforce the terms of an insurance policy, but rather [she] was seeking relief from a specific term in her insurance policy which permitted subrogation...." <u>Id.</u> at 190-91.

8.      Similarly, in <u>National Investors Fire & Cas. Ins. Co. v. Edwards</u>, 5 Ark. App. 42 (1982), the insured brought suit seeking to recover work loss benefits; the insurance company denied coverage and also asserted that it was entitled to subrogation from a settlement with the tortfeasor.  The Arkansas Court of Appeals held:

> [T]he trial court erred in allowing attorney's fees and penalty against the [insurance company].  Had the issue of [the insurance company's] rights of subrogation and credit not been in issue, and the suit been solely for recovery under the policy, these allowances might have been proper....  However, as the action against the [insurance company] was brought after the settlement was made and it relied upon its rights set forth in the subrogation statutes ..., the court should not have allowed attorney's fees or [the] 12% penalty ...

<u>Id.</u> at 45.

9.      In the telephonic hearing on October 25, 2011, the undersigned asked the parties to address,  in light of the holdings in <u>Kennedy</u> and <u>Edwards</u>, whether attorney's fees and the

12% penalty were recoverable in this action, and thus, whether they should be included in the amount in controversy.  In his brief on this issue, Plaintiff concedes that, while he sought such relief under § 23-79-208, "the provisions of this state statute do not apply to the case at bar." (Doc. 66 at pg. 3.)  Defendants argue that § 23-79-208 does apply and they attempt to distinguish Kennedy and Edwards, arguing that Plaintiff alleges in the present case that the Defendants breached a specific policy provision which allowed for subrogation only if the insured had been "fully compensated for damages."  Defendants argue that Kennedy and Edwards did not include any allegation that the insurance company had breached a specific policy provision related to subrogation.  The undersigned sees no merit to this distinction.

The plain language of § 23-79-208 provides for attorney's fees and a penalty only if the insurance company "fail[s] to pay the losses within the time specified in the policy after demand is made."  The statute contains no mention of the entitlement to fees or a penalty in a case like the present one, where the insurance company has paid the loss and then seeks subrogation from amounts collected from a third-party tortfeasor.  The Arkansas Supreme Court has held that § 23-79-208, being penal in nature, is to be strictly construed, as its purpose is to "punish the unwarranted delaying tactics of insurance companies."  See State Farm Auto Ins. Co. v. Stamps, 104 Ark. App. 308, 311-12, aff'd 2009 Ark. 621 (2009).  Based on the plain language of the statute and the purpose of the statute, as well as the reasoning in Kennedy and Edwards, the undersigned finds that § 23-79-208 does not apply to the instant action and that, therefore, the attorney's fees and 12% penalty provided for in that statute should not be included in calculating the amount in controversy.

AO72A
(Rev. 8/82)

10.     Defendants argue that, even if § 23-79-208 does not apply, "Ark. Code Ann. § 16-22-308[] would provide Plaintiff with the possibility of recovering attorney's fees if he prevails in this breach of contract action."  (Doc. 65 at pg. 11.)  Plaintiff "concurs with this argument" and acknowledges that an "attorney's fee of 33.3% would be an accurate assessment ...."  (Doc. 66 at pg. 5.)  Section 16-22-308 provides that "[i]n any civil action to recover on [a] ... breach of contract, unless otherwise provided by law ..., the prevailing party may be allowed a reasonable attorney's fee ...."

In <u>Akins v. Nautilus Ins. Co.</u>, 2008 WL 4493604 (Ark. Ct. App. Oct. 8, 2008), the Arkansas Court of Appeals observed that Section 2 of Act No. 135 of 1999, which amended the insurance code's specific provision for attorney's fees found in § 23-79-208, provided:

> [A]ny other law or parts of law of general application regarding the award of attorney's fees, as applied in litigation involving policies of insurance, are superseded by the provisions of this Act.  Specifically, the provisions of § 16-22-308 regarding the award of attorneys' fees to the prevailing party in a civil action for breach of contract are expressly superseded by the provisions of this Act.

<u>Id.</u> at *3-4.  Thus, it appears that the Arkansas legislature has expressed specific intent to disallow attorney's fees under § 16-22-308 for claims involving the alleged breach of an insurance policy.  Further, as observed by the Arkansas Supreme Court,  § 16-22-308 "never mentions insurance policies and never expressly provides attorney's fees for either insureds or insurers.  Because attorney's fees are awarded only when expressly allowed by statute or rule, the silence of such fee awards in []§ 16-22-308 .. can only be interpreted to mean that the General Assembly never intended that attorney's fees be awarded to insurers...." <u>Village Market, Inc. v. State Farm Gen. Ins. Co.</u>, 334 Ark. 227, 229-30 (1998).  While <u>Village Market</u> addressed the availability of attorney's fees to insurers, the same statutory construction would apply to

-7-

claims by insureds, and thus, would preclude the recovery of attorney's fees in this action under § 16-22-308. This conclusion is further supported by the following observation made by another court in this district: "[T]he Court is unaware of any authority supporting an award of attorney's fees under section 16-22-308 in cases involving insurance coverage disputes." <u>Ohio Cas. Ins. Co. v. Union Pac. R.R. Co.</u>, 2009 WL 413728, *2 (W.D. Ark. Feb. 18, 2009).

11.   Based on the foregoing, there does not appear to be any statutory basis for an award of attorney's fees or a penalty in this action. Accordingly, the undersigned concludes that such amounts should not be included in calculating the amount in controversy.

**Additional Issues Raised by Defendants**

12.   The undersigned did not direct or invite the parties to address the other amounts in controversy that were, unlike the availability of attorney's fees and 12% penalty, previously raised by the parties and specifically addressed by Judge Hendren in ruling on the motion to remand. Notwithstanding this fact, in an attempt to satisfy the jurisdictional minimum in the absence of the inclusion of attorney's fees and the 12% penalty, Defendants have raised additional arguments with regard to the amount of subrogation collected and the amount of punitive damages. The undersigned believes this to be inappropriate, as it is, in essence, an attempt to have the undersigned reconsider issues that *were* specifically addressed in Judge Hendren's prior ruling. Defendants' arguments may, therefore, be rejected on this basis alone. Nevertheless, the undersigned will address each of Defendants' arguments in turn.

13.   First, Defendants argue:

Defendants ... stated in their Notice of Removal that "if this litigation lasts two years, Defendants will likely recover an additional $750,000.00 in subrogation payments" ($375,000 per year multiplied by two years of litigation).... Judge

-8-

> Hendren ... assumed only one year of litigation, although the estimate of two or more years is certainly reasonable considering that Plaintiff's Second Amended Petition was filed over one year ago.

(Doc. 65 at pg. 6.)

14.    Judge Hendren assumed only one year of litigation, observing that the matter had been set for trial the week of October 31, 2011, and that there was no reason why it could not be resolved within that period.  (Doc. 17 at pg. 3 n.1) While this action has now been pending over a year and has been taken off of the trial docket pending a ruling on the motion for class certification, "the amount in controversy is determined at the time of removal not at some speculative time of judgment." Wozniak v. Dolgencorp, LLC, 2009 WL 4015577, *2 (M.D. Fla. Nov. 19, 2009).  At the time of removal, it would have been speculative to assume that the litigation would last more than one year.  This is demonstrated by the fact that the case was initially set to proceed to trial within approximately one year after it was removed to this Court. To allow the Defendants to satisfy the amount in controversy by allowing additional sums to accrue due to delays in the litigation would have the impermissible "effect of saying that jurisdiction can be acquired ... by a lapse of time before a decision on the merits." Anderson v. St. Paul Mercury Indem. Co., 119 F. Supp. 222, 223 (W.D. La. 1954).  Accordingly, the undersigned sees no merit to Defendants' argument that an additional year in subrogation payments ($375,000.00) should be added to the calculations set forth in Judge Hendren's order ruling on the motion to remand.

15.    Defendants next argue that the undersigned should consider a greater award of punitive damages than what was argued in their notice of removal.  As stated above, in denying the motion to remand, the Judge Hendren relied on Defendants' argument that "even a very low

punitive/compensatory damages ratio [.5:1] would cause the total damages in controversy to exceed the $5,000,000.00 requirement." (Doc. 17 at pg. 3.) Defendants now argue that a "punitive/compensatory ratio of only 1.22:1" would satisfy the amount in controversy. Plaintiff responds that the discovery it has conducted in this case reveals that "there is no way for Plaintiff to show the requisite malice and/or intent to cause damage required by law for punitive damages to be awardable[;] ... [p]unitive damages are not available in this case because the facts of the case cannot meet the standard required by applicable law." (Doc. 66 at pg. 8.)

16.     As stated above, the undersigned believes it would be inappropriate to reconsider the punitive damages issue given that Judge Hendren specifically addressed this issue in ruling on the motion to remand. Thus, it would be no more appropriate to allow the Defendants to argue for a higher punitive/compensatory damages ratio than it would be to allow Plaintiff to relitigate the availability of punitive damages. However, were the undersigned to consider the parties' new arguments, I would not include punitive damages in the amount in controversy calculation.

17.     When determining the amount in controversy, a claim for punitive damages is to be given closer scrutiny than a claim for actual damages. See OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 348 (8th Cir. 2007). While subsequent events reducing the amount in controversy do not divest the Court of jurisdiction, "[t]his is not to say subsequent events are entirely irrelevant." Schubert, 649 F.3d at 823. In Schubert, the Eighth Circuit explained:

> "Subsequent events may ... be relevant to prove the existence or nonexistence of
> diversity jurisdiction at the time of filing," ... and a "distinction must be made ...
> between subsequent events that change the amount in controversy and subsequent
> revelations that, in fact, the required amount was or was not in controversy at the
> commencement of the action." ... In considering the types of materials which can

-10-

AO72A
(Rev. 8/82)

contain such "revelations," courts have mentioned the "face of the pleadings," ... and the "proof adduced to the court before trial[]"....

There is admittedly certain tension between the principle that post-removal events do not affect jurisdiction and that pretrial proofs can be used to assess the amount in controversy as it existed at the time of removal.  It is resolved, however, by deferring to the plaintiff's estimate with respect to the amount in controversy whenever the impossibility of recovery is not apparent from the face of the pleadings but emerges from adjudication of the merits....  Further, resort to materials developed in discovery is allowed merely to "amplify the meaning of the complaint allegations."

Id. (internal citations omitted).

18.    In including punitive damages in the amount of controversy calculation, Judge Hendren reasoned that Plaintiff had "*not* disclaimed punitive damages," and that Plaintiff, therefore, had not shown "*to a legal certainty*" that her claim was for less than the requisite amount.  (Doc. 17 at pg. 5.)  After conducting discovery in this action, it appears that Plaintiff now, in fact, disclaims that punitive damages were ever available, as Plaintiff specifically states that "[p]unitive damages are not available in this case because the facts of the case cannot meet the standard required by applicable law."[2]  (Doc. 66 at pg. 8.)  This is not an instance in which a subsequent event reduced the amount in controversy, but an instance, as described in Schubert, in which discovery revealed that punitive damages are not now and were not at the time of removal available.  Thus, while the undersigned does not believe it appropriate to reconsider the punitive damages issue, if I were to consider the arguments advanced in the parties' briefs, I would not include punitive damages in the jurisdictional minimum calculation.

_____

[2]The undersigned believes that the doctrine of judicial estoppel and the "related doctrine against taking inconsistent positions" would prevent Plaintiff from "changing [his] tune when the case returns to state court."  Murphy v. Reebok Intl., Ltd., 2011 WL 1559234, *2 (E.D. Ark. April 22, 2011).

-11-

**Conclusion**

19.     Based on the foregoing, the undersigned finds as follows:

*     The issue of the availability of statutory attorney's fees and the 12% penalty under Arkansas law was not previously raised by the parties, and therefore, was not addressed by the Court in ruling on the motion to remand.

*     A review of the briefs the parties were directed to file on this issue and a review of the applicable law convinces the undersigned that attorney's fees and a penalty are not available in this action and, therefore, should not be included in the amount in controversy calculation.

*     Based on the calculations set forth in the order denying the motion to remand, the amount in controversy would, therefore, be reduced to the following:

| | |
|---|---|
| Actual subrogation collected for the past five years: | $1,873, 277.48 |
| Additional year of collection during litigation: | 375,000.00 |
| Punitive Damages (.5:1 ratio to subrogation collected) | 1,124,138.74 |
| TOTAL | $3,372,416.22 |

*     The undersigned rejects Defendants' additional arguments with regard to the amount of subrogation collected and the amount of punitive damages, as these issues *were* specifically addressed in the Court's prior ruling, and, in any event, these arguments are without merit.

20.     Accordingly, the undersigned recommends that this matter be REMANDED to the Circuit Court of Sebastian County, as the amount in controversy does not exceed

AO72A
(Rev. 8/82)

$5,000,000.00, as required to establish jurisdiction under CAFA, and this Court, therefore, lacks subject matter jurisdiction.

21. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED AND ADJUDGED this 20th day of Decemebr, 2011.


*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-13-

AO72A
(Rev. 8/82)