IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FT. SMITH DIVISION

DANIEL PRICE, Individually, and on
Behalf of All Others Similarly Situated                    PLAINTIFF

NO. 10-2152

UNITED SERVICES AUTOMOBILE
ASSOCIATION, USAA CASUALTY
INSURANCE COMPANY, USAA GENERAL
INDEMNITY COMPANY, and USAA                    DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Now before the Court is Plaintiff's Motion to Certify Class. (Doc. 47). On July 18,

2011, this matter was referred to the undersigned by United States District Judge P.K. Holmes.

Defendants  filed a response on August 5, 2011 (Doc. 53), Plaintiff filed a Reply on August 15,

2011 (Doc. 56), and Defendants filed a Surreply on August 26, 2011. (Doc. 62). On October

25, 2011, the undersigned directed the parties to submit briefs addressing the question of whether

subject matter jurisdiction existed. (Doc. 64). On December 19, 2011, the undersigned entered

a Report and Recommendation regarding the amount in controversy, recommending that the

Court find subject matter jurisdiction did not exist. (Doc. 70). On February 22, 2012, Judge

Holmes adopted the report and recommendation in part and reversed it in part, and found that

the Court had subject matter jurisdiction. (Doc. 72). The undersigned now enters the following

report and recommendation on the Motion to Certify Class.

-1-

## I.   Factual Background

This action arose out of a motor vehicle accident which occurred on February 25, 2007, in Sebastian County, Arkansas, involving Plaintiff and his daughter.  Plaintiff contends, and it is not disputed,  that at the time of the accident, Plaintiff and the motor vehicle in which he was injured were insured by a policy of automobile insurance issued to Plaintiff's wife, Brenda Price, by USAA, policy number 00417 42 45U 105 3.  (Doc. 51 at ¶¶ 18-19).  It is alleged that the driver of the other vehicle involved in the collision was at fault for causing the collision, which proximately caused injuries and damages to Plaintiff, and that Plaintiff incurred medical bills for the injuries he sustained.  (Doc. 51 at ¶¶ 20-21).  Plaintiff submitted claims for medical benefits under the policy, representing that he had incurred $4,309.00 in medical expenses and $1,016.40 in lost wages resulting from the accident.  (Defendant's Ex. 5 at USAA-P-1844-47).  Plaintiff also alleged future medical expenses for TMJ-related jaw pain.  USAA paid $2,103.78 to Plaintiff and $5,000 to Plaintiff's daughter in medical payment benefits.  It is alleged that USAA sent correspondence to the third party's insurance carrier, Farmers Insurance Group ("Farmers"), demanding full reimbursement for medical benefits paid or to be paid in the future.

Defendant submitted documents which indicate that on March 13, 2007, USAA advised Brenda Price that USAA intended to exercise its subrogation rights with respect to both claims, and that Mrs. Price affirmed that she understood.  (Doc. 53-8 at p.119-120).  After USAA paid Plaintiff's medical bills, it sent him a letter stating: "We'll pursue recovery for these payments from the adverse party.  Please do not seek reimbursement for these payments or sign any release that doesn't specifically protect our recovery rights."  (Doc. 53-10).  Defendant also submitted documents indicating that Plaintiff continued to negotiate a settlement with Farmers, and

ultimately agreed to a settlement amount of $8,692.40. (Doc. 53-13). Farmers issued two checks

in response to the agreed settlement: one for $6,558.62 payable to Plaintiff only, and one for

$2,103.78, payable to USAA and Plaintiff jointly. (Docs. 53-14, 53-15). On July 14, 2008,

Brenda Price called USAA and advised that they had settled Plaintiff's claim with Farmers and

would be forwarding payment to USAA. (Doc. 53-8). Plaintiff thereafter endorsed the second

check, which USAA cashed. (Doc. 53-15).

## II.     Policy Language

It is not disputed that at the time of the accident, Plaintiff was covered under an

automobile policy issued by USAA to Brenda Price, Plaintiff's wife.[1] (Doc. 53 at p. 4).

Defendants agree that the policy provided that USAA would pay a covered person a maximum

of $5,000 in medical payment benefits under its personal injury protection (PIP) coverage. (Doc.

53 at p. 4).

Part E, "Our Right to Recover Payment" provides, in pertinent part:

A.  If we make a payment under this policy and the person to or for whom
payment was made has a right to recover damages from another, we will be
subrogated to that right.  That person shall do whatever is necessary to enable us
to exercise our rights, and shall do nothing after loss to prejudice them.
However, our rights in this paragraph do not apply under Part D, against any
person using your covered auto with a reasonable belief that that person is
entitled to do so.
B.  If we make a payment under this policy and the person to or for whom
payment was made recovers damages from another, that person shall hold in trust
for us the proceeds of the recovery and reimburse us to the extent of our payment.
C.  Our rights under paragraphs A and B apply only after the covered person has
been fully compensated for damages.

---

[1]In their responsive brief, Defendants state that "USAA," named in the caption, is not a legal entity.  In fact,
United Services Automobile Insurance Company issued the policy.  The Court does not believe at this point this
is a fatal error.  Plaintiff should seek to amend the petition to properly name USAA.

(Doc. 53-4 at p. 213).

## III.    Arguments of the Parties

Under Arkansas law, most specifically the case of Riley v. State Farm Mut. Auto Ins. Co., No. 10-1220, 2011 WL 2410521,____S.W.3d____ (Ark. June 16, 2011), a subrogation lien cannot arise or attach, absent an agreement or settlement between the parties, until there is a judicial determination that the insured has been made whole. Id. at *12. According to Plaintiff, Defendants, as a regular practice, collect money in subrogation without an agreement from their insureds, and without a judicial determination that the insured was made whole or fully compensated by his third party recovery. (Doc. 48 at p. 3). Plaintiff states that USAA did not reach an agreement with him, or obtain a judicial determination that Plaintiff had been made whole, as required by Arkansas law. Plaintiff brings this action individually and as a class action for "all other similarly situated Arkansas policy holders of motor vehicle policies of insurance issued by USAA and its subsidiaries." (Doc. 51 at paragraph 12). As a result, it is argued that USAA has been collecting and retaining money that rightfully belongs to its insured, and that the prerequisites for Rule 23(a) and (b)(2) certification have been met in the present case.

Defendants oppose class certification arguing, inter alia, that Plaintiff is not an adequate class representative and Plaintiff's counsel do not have the requisite experience to pursue a class action.

## IV.    Motion to Certify Class (Doc. 47)

Plaintiff moves, pursuant to Fed.R.Civ.P. 23, for the Court to certify a class action against Defendants on behalf of "all current or previous Arkansas residents who, during the five years

-4-

immediately preceding the filing of this Complaint, up to and through the resolution of this

action, have:

> (a) Been insured under a policy of automobile insurance issued by Defendants in the State of Arkansas that contained personal injury protection, medical benefit coverage or both;  and

> (b) Defendants made payment under personal injury protection and/or medical benefits to or on behalf of Defendants' insured; and

> (c) Where Defendants' insured made a claim for bodily injury and recovered money damages on this bodily injury claim from a third party tortfeasor and/or the tortfeasor's insurer;  and

> (d) Defendants asserted a lien or interest, to the extent of collecting money out of their insured's third party injury settlement without an agreement from the insured and without a judicial determination that Defendants' insured had been made whole or fully compensated by the third party injury settlement.

(Doc. 47 at ¶ 3).

Plaintiff seeks the following relief individually and on behalf of the putative class: An

Order demanding:

> This Court should declare that Arkansas law places a duty upon USAA to obtain an agreement with its insureds regarding disposition of funds claimed by USAA in subrogation or that a judicial determination must be obtained that its insureds have been "made whole" for their damages;

> That this Court should employ a constructive trust and compel USAA to account and pay into trust all money that it has collected on its claims for subrogation for the  past five (5) years, pre-judgment and post-judgment interest, costs and a reasonable attorney's fee.

> Based upon all allegations raised in this Complaint and pursuant to Arkansas law USAA should be ordered and directed to reimburse all Class members the amount of money it collected in its claims for subrogation over the five year period prior to the filing of this action and up to the current date, together with pre-judgment and post-judgment interest.

> That USAA should be further enjoined from collecting on any medpay

AO72A
(Rev. 8/82)

subrogation claims unless and until it has advised its insureds of the Arkansas law on subrogation and that it has either obtained an agreement from its insureds to relinquish claimed subrogation funds or that a legal determination has been obtained that its insureds have been "made whole."

That USAA should be directed to compile a list of the names and addresses of those insureds that would fall within the Class as identified above and to provide an accounting and to disclose the amount of money USAA has collected and retained on its claims for subrogation, arising out of its payment of PIP and medical benefits during the five year period prior to the filing of this action and up to the current date.

(Doc. 51 at ¶¶ 51, 57, 59-61).[2]

## V.   Discussion

Pursuant to Fed.R.Civ.P. 23(a), the party seeking certification must demonstrate first, that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Next, the party seeking certification must satisfy at least one of the three requirements listed in Rule 23(b), and in the present case, Plaintiff is relying on Rule 23(b)(2), which reads:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (b)(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; ...

For the following reasons, the Court is of the opinion that the Plaintiff has failed to meet his burden of showing that he has satisfied Rule 23(a)(4), because he will not fairly and

---

[2]Taken from Plaintiff's Fourth Amended Petition for Declaratory Judgment, Breach of Fiduciary Duty, Injunctive Relief and Class Action (Doc. 51), filed after the Motion for Class Certification was filed.

adequately protect the interests of the class. Accordingly, it is not necessary to address whether the other requirements of Rule 23(a) and (b) are met.

Since the history of Plaintiff's pleadings in this case is critical to the discussion of adequacy of representation, the Court will discuss in detail the background behind the fact that, over the course of almost two years, Plaintiff has amended his original complaint four times, the most recent amendment being made, in fact, after the filing of the Motion for Class Certification. This case began as an individual "Petition for Declaratory Judgment," filed on September 2, 2009, in state court, wherein Plaintiff's daughter, Ariana Price, brought suit seeking damages for: full payment and benefit of the settlement she entered into with the third party tortfeasor and his insurer; costs and fees incurred to enforce her rights against the insurer; punitive damages against the insurer; pre-judgment and post-judgment interest; 12% statutory penalty; and attorneys fees. (Doc. 1-2 at pgs. 10-11). Ms. Price was the only named Plaintiff in the original complaint and did not seek to bring the action on behalf of any putative class.

On January 27, 2010, an "Amended Petition for Declaratory Judgment, Breach of Contract, Deceptive Trade Practices, First Party Bad Faith and Interference with Contractual Relationship" was filed in state court, wherein Ms. Price sought the same type of damages as in her original petition, including compensatory and punitive damages. (Doc. 5 at P. 13). Again, Ms. Price was the only named Plaintiff and did not seek to bring the action on behalf of a class.

On September 20, 2010, Ms. Price filed a "Second Amended Petition for Declaratory Judgment, Breach of Contract, Breach of Fiduciaty Duty, Conversion, Injunctive Relief and Class Action" in state court. (Doc. 8). In the second amended petition, Ms. Price sought monetary damages for breach of contract and violation of Arkansas subrogation law;  12%

penalty;  reasonable attorney's fees;  pre-judgment and post-judgment interest and costs;

"declaratory relief under Count I on her behalf and on behalf of the Class;"  compensatory relief

for conversion;  damages for breach of fiduciary duty;  and injunctive relief.  (Doc. 8 at ¶19).

As demonstrated by the above recitation of events, there was no mention of pursuing this

action as a class action until approximately one year after the action was initiated in state court.

Further, up to this point, Daniel Price, the currently named Plaintiff, had yet to be included as

a Plaintiff in this action.

On October 13, 2010, Defendants removed this matter to federal court.[3]  (Doc. 1).  On

February 10, 2011, after the action had already been pending for over 15 months, a "Third

Amended Petition for Declaratory Judgment, Breach of Contract, Breach of Fiduciary Duty,

Conversion, Injunctive Relief and Class Action" was filed, adding Daniel Price as a Plaintiff.

(Doc. 21).  In this petition, Plaintiff sought monetary damages for "Plaintiffs and the Class" for

breach of contract pertaining to subrogation and violation of Arkansas subrogation law; 12%

penalty and reasonable attorney's fees;  pre-judgment and post-judgment interest and costs;

declaratory relief under Count I on their behalf and behalf of the class;  compensatory damages

for conversion;  damages for breach of fiduciary duty;  and injunctive relief.  (Doc. 21 at ¶19).

On March 14, 2011, a Motion to Dismiss Ariana Price from the matter was filed, stating

that "the facts, allegations and legal issues which gave rise to her cause of action are distinct

from the facts, allegations and legal issues raised by Plaintiff Daniel Price individually and on

behalf of the putative class."  (Doc. 27).  The motion further stated that after reviewing

---

[3]On January 10, 2011, United States District Judge Jimm Larry Hendren entered an Order denying a Motion to
Remand.  (Doc. 17).

documents received in discovery, "there is an inference that a made whole analysis was made in Defendants' denying the request to waive subrogation. This inference is enough to warrant dismissal of Plaintiff Ariana Price's claim as presented in this action." (Doc. 27 a p. 2). On April 4, 2011, the motion was granted. (Doc. 31).

On May 13, 2011, a Motion for Protective Order was filed by Defendant USAA, and on May 23, 2011, a Motion to Compel was filed by Plaintiff. (Docs. 32 and 36). Both motions were referred to the undersigned. Telephonic hearings were held on the motions by the undersigned on June 9, 2011, and again on June 17, 2011. During the June 9, 2011 hearing, the undersigned inquired of Plaintiff's counsel as to when he intended to file a Motion to Certify the Class, as the deadline[4] had passed nearly four months prior and the case was scheduled to proceed to trial in less than five months. Plaintiff's counsel was advised that he would have to seek an extension of time to file such a motion. During the June 17, 2011 hearing, in deciding whether to compel Plaintiff to respond to Defendant's Motion to Compel, the undersigned noted that Plaintiff was seeking not only declaratory relief in his complaint, but also monetary damages for breach of contract and conversion, and therefore, Defendant would be entitled to some of the information sought in the Motion to Compel. Plaintiff's counsel asked the undersigned whether filing an amended complaint omitting the breach of contract and conversion claims would settle the discovery issue.

On June 23, 2011, after being granted an extension of time to file the motion, Plaintiff filed a Motion to Certify Class. (Doc. 47). Also on June 23, 2011, Plaintiff filed a Motion for

---

[4]As will be discussed later in the opinion, the deadline for filing a motion for class certification appears to have expired on or about February 18, 2011.

AO72A
(Rev. 8/82)

Leave to Amend Complaint to Dismiss Counts II and II of Plaintiff's Third Amended Complaint. (Doc. 49). In the motion, Plaintiff stated that he was seeking to dismiss Count II and Count III (breach of contract and tort of conversion) and "all allegations seeking a legal remedy in the form of a judgment or damages." (Doc. 49). This was sought so that Plaintiff's entire remaining theories of recovery would be based in equity. On July 20, 2011, almost two years after the initial petition was filed in state court, a "Fourth Amended Petition for Declaratory Judgment, Breach of Fiduciary Duty, Injunctive Relief and Class Action" was filed, wherein Plaintiff abandoned his breach of contract and conversion claims for money damages and sought only the equitable relief set out above.

In arguing that Plaintiff will not adequately and fairly represent the class members, Defendants refer to excerpts from Plaintiff's deposition, wherein Plaintiff indicated he did not believe he had any duties or responsibilities as a class representative, did not know the class definition, and did not know what types of damages or relief was sought. A review of the relevant pages of Plaintiff's deposition reveals Plaintiff's knowledge of this matter, and the Court will quote it at length:

> Q.   Do you have any understanding as to anything additional a class representative is responsible for, other than to being a member of this class?
> A. No.
> Q. Can you describe for me in your words, Mr. Price, what this lawsuit, class action lawsuit, is about?
> A. I can describe what I think it's about. I don't know if that's the legal side of it. . . .
>       . . .
> A. Okay. I rely on my lawyers to mostly figure the legal ins and outs, because that's their profession. My claim is in regards to what I understand the suit to be about, is that I had a settlement with Farmers, and USAA required Farmers to take out of my settlement money to reimburse them for my medical claim with them. And my issue that makes me part of this is that I thought I paid USAA for

-10-

insurance from USAA from which they paid the claim. I didn't understand and still don't understand how they now become a party to my settlement with Farmers. And as I understand it, they shouldn't be.

Q. Who are the – what is the class definition in this class action lawsuit?

A. I don't know. I think it's written in some of the documents, isn't it?

Q. What is your understanding of who is in this class?

A. I don't know. I'm not going to study the class thing. I don't feel like I have a need to understand that.

Q. Do you know what type of damages, damages or relief, is being requested in this class action lawsuit?

Mr. Borland: Object to the form.

The Witness: I'm not sure.

By Ms. Pruitt;

Q. What are you asking for, Mr. Price, as a plaintiff in this class action, as far as a remedy?

A. I don't know that the suit itself – and it may – because there is a lot of legal mumbo jumbo. But I don't know that it is specifying like, you know, to solve this is "X", "Y", or "Z".

Q. Do you know whether the lawsuit is requesting any monetary damages from USAA?

A. What do you mean by "monetary damages"?

. . .

Q. Do you have any duty or responsibility as it relates to the other class members in this case?

Mr. Borland: I object to the form.

The Witness: I guess when I say I don't understand the question, I'm not sure if I do or don't. But it doesn't make any sense – maybe its supposed to, but it doesn't really make sense to me.

. . .

Q. Okay. Have you thought about how you intend to handle the cost of this lawsuit?

A. No.

. . .

Q. What happens if you lose this lawsuit, will you have to pay anything?

A. I don't know.

. . .

Q. Did you agree to be a class representative in this lawsuit?

A. I'm not sure exactly what that means.

Q. You don't know whether you agreed to be a class representative or not?

A. I'm not sure what that means.

Q. Why didn't you simply file an individual lawsuit, just for you?

A. I think the question you are asking is relative to the strategy that I discussed with my lawyers in regards to how we should pursue this.

Q. Okay. Do you have any understanding of what will happen in this lawsuit if class certification is denied?                    -11-

A. No.
. . .
Q. Do you believe that you should get a larger payment than other class members because you are a class representative?
A. I guess I would like to think I could or would, but I have no idea what – I don't know how that works, and didn't really ask.
Q. Okay.
A. It's not something I pursued as part of this suit.
. . .
Q. How many times have you met with your lawyers in person about this litigation?
A. I think – I think two or three. It could be more.
. . .
(Doc. 53-3 at pgs. 51-56).

"Rule 23(a)(4) permits certification of a class action only if the representative 'will fairly and adequately protect the interests of the class.' Fed.R.Civ.P. 23(a)(4)." Rattray v. Woodbury County, IA., 614 F.3d 831, 835 (8th Cir. 2010). "A district court must "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a).'" In re Milk Products Antitrust Litigation, 195 F.3d 430, 436 (8th Cir. 1999), cert. denied, 120 S.Ct. 1534 (2000), quoting from General Tel. Co. v. Falcon, 457 U.S. 147, 160, (1983). "The inquiry into adequacy of representation, in particular, requires the district court's close scrutiny, because the purpose of Rule 23(a)(4) is to ensure due process for absent class members, who generally are bound by a judgment rendered in a class action." Rattray, 614 F.3d at 835. The Court is accorded broad discretion to decide whether certification is appropriate, and the Eighth Circuit "will reverse only for abuse of that discretion." Id. Plaintiff bears the burden in this case of proving that he will adequately represent the class, and the Court must decide whether Rule 23(a)(4) is satisfied "through balancing 'the convenience of maintaining a class

-12-

action and the need to guarantee adequate representation to the class members.'" Id., quoting Wright v. Stone Container Corp., 524 F.2d 1058, 1061 (8th Cir. 1975). "A named plaintiff who lacks the desire to 'vigorously pursue' the interests of potential class members is not a fair and adequate representative of the class." In re Milk Products Antitrust Litigation, 195 F.3d at 437.

The course of the litigation up to this point demonstrates that Plaintiff lacks the knowledge of a class representative's duties, has not been actively involved in the litigation decisions in this case, and is not committed to fairly and adequately representing the interests of potential class members. This action was initiated in September 2009 by Plaintiff's daughter. No mention of a class action was made until a year later, when Ms. Price filed a Second Amended Petition. Plaintiff did not become a part of this action until February 2011, nearly a year and a half after it was initiated and about the same time that his daughter moved to be dismissed from the action, as it was discovered that her cause of action was distinct from the putative class's cause of action. Had the Plaintiff had a true interest in representing a class, the Court questions why he did not join in the action until it was discovered that his daughter could not represent the interests of the class.

It appears to the Court that Plaintiff is "simply lending [his name] to a suit controlled entirely by the class attorney." 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, § 1766, at 372 (3d ed. 2005); e.g. Bodner v. Oreck Direct, LLC, No. C 06-4756 MHP, 2007 WL 1223777, at *2-3 (N.D. Cal. Apr. 25, 2007)(denying class certification because class counsel was "driving force" behind suit). This is evidenced by the fact that Plaintiff's counsel amended the complaint in June 2011, abandoning any claim for damages and seeking only equitable relief. It appears that Plaintiff did not have any input in this

-13-

decision, as he admitted during his deposition one month later that he did not know the type of relief being requested in the class action. Further, when asked whether he agreed to be a class representative, Plaintiff stated that he was "not sure exactly what that means." When asked why he did not simply file an individual lawsuit, Plaintiff stated that it was a strategy matter "I discussed with my lawyers in regards to how we should pursue this." (Doc. 53-3 at p. 59). Plaintiff went on to state that he had no understanding of the responsibilities of a class representative to the unnamed class members; that he did not know the class definition or who was in the class; that he was not going to "study the class thing," as he did not feel like he needed to understand it; that he did not know what would happen if class certification was denied; and that he did not know how his attorneys would be compensated if he lost the lawsuit. (Doc. 53-3 at pgs. 53, 59). Plaintiff's own testimony demonstrates that he does not understand or appear to care about his duty as a class representative to vigorously pursue the interests of potential class members.

Plaintiff's delay in filing a motion for class certification also undermines confidence in the zeal with which he would represent the interests of absent class members. Fed.R.Civ.P. 23(c)(1)(A) provides: "At an early practicable time after a person sues . . . as a class representative, the Court must determine by order whether to certify the action as a class action." As early as September 20, 2010, when Ms. Price filed her second amended petition, individually, and on behalf of a class of all others similarly situated, Plaintiff's counsel should have been making all efforts to assess pertinent evidence and file a motion for class certification. Local Rule 26.1(13) of the Eastern and Western Districts of Arkansas provides that, in the typical case, the deadline for filing motions for class certification should be no later than ninety (90) days after

-14-

the Fed. R. Civ. P. 26(f) conference.  The initial scheduling order issued in this case set November 18, 2010, as the deadline for the Rule 26(f) conference. Thus, the deadline for filing a motion for class certification appears to have expired on or about February 18, 2011. Plaintiff failed to move for class certification by this deadline and did not seek an extension of this deadline.  It was not until  after the undersigned brought this failure to Plaintiff's counsel's attention during the June 17, 2011 telephonic hearing on the motion to compel that Plaintiff's counsel then filed a motion for extension of time to file a class certification motion. The motion for class certification was finally filed on June 23, 2011, approximately four months after the deadline for filing such a motion had passed; just five months prior to the scheduled trial date – resulting in the trial being cancelled and postponed until resolution of the class certification issue; nine months after the assertion of a class claim; and over a year and a half after the action was filed in state court. "[T]he failure of the representative to move for class certification in a timely fashion or otherwise to prosecute the action is a clear indication that the named party is not an adequate representative." 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1766, at 373 (3d ed. 2005); see also Rattray, 614 F.3d at 831 (upholding district court's conclusion that "counsel with any experience litigating class actions could reasonably be expected to assess pertinent evidence and to file a motion to certify a class in much less than six months after filing a class claim.")

## VI.    Conclusion

Based on the foregoing, the undersigned concludes that Plaintiff has failed to meet his burden of showing that he will fairly and adequately protect the interests of the class, as required by Rule 23(a)(4). Accordingly, it is my recommendation that Plaintiff's Motion to Certify Class

be denied.

The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

IT IS SO ORDERED this 16th day of March, 2012.


/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)